## Case No. 4,269.

### The ECLIPSE.

[1 Tex. Law J. 197; 17 Alb. Law J. 192.]

District Court, E. D. Texas. Feb. 20, 1878.

MORRILL, District Judge. Section 4233, rule 10, provides: "All vessels, whether steam or sail vessels, when at anchor in roadsteads or fairways, shall, between sunset and sunrise, exhibit where it can best be seen, but at a height not exceeding twenty feet above the hull, a white light in a globular lantern of eight inches in diameter, and so constructed as to show a clear, uniform and unbroken light, visible all around the horizon, and at a distance of at least one mile." Section 4234 provides: "Every such vessel that shall be navigated without complying with the provisions of the preceding article shall be liable to a penalty of two hundred dollars; one half to go to the informer, for which sum the vessel so navigated shall be liable, and may be seized, and proceeded against, by way of libel. in any district court of the United States having jurisdiction of the offense." Admiralty rule 22 provides: "All informations and libels of information upon seizures for any breach of the navigation laws of the United States, shall state the place of seizure, whether it be on land, or on the high seas, or on navigable waters within the admiralty and maritime jurisdiction of the United States, and the district within which the property is brought, and where it then is. The information or libel shall propose, in distinct articles the matters relied on as grounds or causes of forfeiture, and aver the same to be contrary to the form of the statute or statutes of the United States in such case provided, as the case may require, and shall conclude with a prayer of due process to enforce the forfeiture, and to give notice to all persons concerned in interest to appear and show cause at the return day of the process, why the forfeiture should not be decreed."

Based on the statute and rule, the district attorney, on August 3d, 1877, filed in this court a libel in the name of the United States, and in behalf of the government and B. G. Shields, Esq., collector of customs for the port of Galveston, stating that the informer, Shields, on the night of March 27th, 1877, did seize a certain vessel called the "Eclipse," and then had the same in his custody, for violation of the navigation laws, by failing "to exhibit where it would best be seen, at a height not exceeding twenty feet above the hull, a white light in a globular lantern of eight inches diameter, and so constructed as to show a clear, uniform and unbroken light, visible all around the horizon, between the hours of one and three a. m., praying for process, proceeding and judgment in the premises as to the law and justice of the matter shall appertain." On the same day, August 3d, 1877, the clerk issued a writ of seizure of the Eclipse, which was executed by the marshal on the same day, and the owners having filed a claim bond for the vessel, it was redelivered to them, on the 20th of August, 1877, by the marshal.

Claimants set up three different defenses: 1. That at no time previous to the filing of the libel was the vessel seized by the collector of customs as alleged in the libel. 2. A former judgment in their favor on the same subject-matter. 3. A general denial of the charge. By permission of the parties, the case was submitted to the judgment of the court. The judge dismissed the libel.

A motion for a new trial has been made, and the reasons for the motion are:

1. "The testimony clearly showed a violation of the law in question, and the court erred in supposing the absence of proof of an intent to violate the law was necessary to the condemnation of the vessel." A clear violation of the law would be, in the language of the law, "a failure to exhibit the required light between sunset and sunrise." It seems to me that where a party showed an intention to comply with the law, by exhibiting the required light, which, from some cause not connected with neglect on the part of the owners of the vessel, was extinguished for a short time only during this period of time, that the alleged violation of the law is not so clear as it appears to be to the district attorney.

But, as this was not the pivotal point upon which the decision of the case turned, we pass to the second assigned reason for a new trial, which is: "Though there was no proof of a seizure of the vessel by B. G. Shields, collector of customs, as alleged in the libel of information, yet the claimants, by bonding the property and pleading to the merits of the case, are to be considered as having submitted to the jurisdiction, and were precluded thereby from afterwards questioning said jurisdiction on the ground of a preliminary seizure." There is an admission that the vessel was not seized when the libel was filed, and that the statement in the libel as to seizure was erroneous. The statute herein quoted plainly provides that

the seizure shall precede the libel. The rule 22 expressly declares that the libel shall state the place of seizure, etc. It is presumed that no attorney-at-law would contend that a court had jurisdiction of a case, "in rem" without the case was properly before the court and subject to its jurisdiction. It is further presumed, that had the libel failed to state that the ship had been seized, that there would be no question of the case being demurrable on this ground.

As has been heretofore stated the claimant of the ship expressly excepted to the cause of action for the cause that there had been no seizure, and this was the first question for the judge to decide. But the district attorney insists that because he has, in addition thereto, set up other answers that he has waived his first answer and has relied upon the decision of Justice Story in the case of The Abby [Case No. 14], and seems to regard that case as parallel with this. A short statement of the case, taken from the opinion of Justice Story, will show that the cases are not, in the least, similar. The judge says: "It was objected that the seizure of the Abby was made in Portland within the judicial cognizance of the district court of Maine, and, therefore, the district court of Massachusetts has not attached. The seizure of the Abby was first made about five miles off Cape Elizabeth, and was, therefore, on the high seas. After the seizure she was permitted to go into Portland harbor. The master of the Abby voluntarily offered to conduct his vessel into Portland, and agreed to redeliver her again to the seizer. Upon her arrival at Portland, the Abby was faithfully redelivered to the seizer. I accede to the position that the court below had no cognizance of the case if the seizure on which the libel is founded was in the port of Portland. Concurrent jurisdiction exists in the district court of other districts only when the seizure is on the high seas." After deciding that the seizure was made upon the high seas, and that it was not abandoned by going into the harbor of Portland, the judge proceeds: "The question has been thus considered by the consent of the parties as if the question of jurisdiction were open upon the record. If the party meant to except to the jurisdiction, he should have filed a declamatory allegation, in the nature of a plea to the jurisdiction. Upon the pleadings in the court, the only question put in issue by the parties is, forfeiture or not, and the court can not travel beyond the defense asserted by the claimants. The question of jurisdiction not having been put in issue cannot be properly in proof before the court, for the proof must be according to the allegations, and no party can be called upon to establish what is not known in controversy by the allegations." We will compare, or more properly, contrast these cases: In the Abby there was a seizure, and the libel was founded on that seizure. In the Eclipse there was no seizure, and, of course, the libel could not be founded on it, whatever might be alleged in it. For the Abby the claimants did not, by pleadings, object to the jurisdiction of the court. In the Eclipse, the exception was made and insisted upon. In the Abby the fish had been caught, and the question verbally, before the court was, whether it should be cooked at Portland or Boston. In the case of the Eclipse the fish had never been caught, and yet we are asked to cook him! Any respectable cook-book is sufficient authority to decide that the fish must be caught before cooked.

2. A third reason assigned is that, by the record in the case, it is manifest that justice has not been done, and that by accident, oversight, mistake or misapprehension the "decree" is erroneous. In giving the pleadings, I have already stated that the second plea of the claimants was a former judgment in their favor upon the same subject matter. It appeared, on trial, that this second plea was true, and that the only difference in the two libels was that, in the first, the libel charged that B. G. Shields did ascertain, etc., relative to the ship. In the case under consideration it is alleged that the ship was the ship seized, when, in fact, it was not. I admit the position assumed by the district attorney when he says "that, by the records, it is manifest that justice has been done," since it is a maxim of the law, "that a man shall not be twice vexed for one and the same cause." But I do not draw the same inference that he does, "that by accident, oversight, mistake or misapprehension the decree is erroneous." My impression is "that, by accident, oversight, mistake or misapprehension," or misinformation as to the seizure having been made, that the suit was erroneously brought. It is not in the "decree" that there was error, even if the suit had been correctly instituted and there had been no defence of a declamatory character, or of former judgment. But, as before stated, the cause was submitted, generally, on all the defences, and since, if any one of the three defences was available for the defendant, the libel must be dismissed; and, furthermore, as there would be no doubt of the fact that the suit between the same parties, on the same subject-matter, had been once before the court and a final judgment rendered, from which there was no appeal, this fact would, of itself, leave no doubt in the mind of the judge as to the disposition of the case. It is too late now to retry the case. I would not be understood as admitting that if the suit had been properly instituted, and there had been no former judgment, or if their defenses had not been insisted upon, that I should, upon the facts of the case, necessarily have decided in favor of the United States. I do not believe that because a light, from some unusual and unexpected cause, happened to be extinguished for a short time, not from want of attention or proper care on the part of the owners of the ship, that the United States would have

been injured in their dignity, sovereignty or treasury. Nor does it appear that any of the good citizens of the United States have been injured. It is to be presumed that the collector of customs considered that it was not plain case of violation of the statute, inasmuch as he made no seizure but simply made a report of the case to the United States district attorney.

Because, therefore, there was no seizure before libel; and because there has been a former judgment upon this identical cause, and the defendants have properly pleaded their facts in their defence; and because there is great doubt in the mind of the judge that the spirit of the statute has been violated; for each and all of these reasons a new trial is refused.